UNITED STATES STEEL
CORPORATION,
Petitioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (LUCZKI),
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 2005.

Decided Dec. 2, 2005.

Marie Jurbala Shiring, Pittsburgh, for petitioner.

Michael A. Johnson, Mt. Pleasant, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge McGINLEY.

United States Steel Corporation (Employer) petitions for review from an order

of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision to deny Employer's Petition for Review of Utilization Review Determination (UR Review Petition) and concomitantly assessed attorney's fees against Employer for unreasonable contest.

Peter Luczki (Claimant) was injured while in the course and scope of his employment on March 2, 2000, when he fell after breaking through a step to a remote crane that Claimant operated. An Agreement for Compensation executed by the parties, dated March 14, 2002, described Claimant's injury as a low back strain.

Beginning on June 2, 2000, Claimant began receiving chiropractic treatment from Robert Homonai, D.C. (Dr. Homonai), including intersegmental traction and myofascial release. From August 2, 2000, and ongoing, Claimant received treatment from Dr. Homonai two times per month, with more treatment periodically occasioned by temporary flare ups of Claimant's symptoms.

On August 29, 2000, Employer filed a Utilization Review (UR) Request pursuant to Section 306(f.1)(6) of the Workers' Compensation Act (Act),[1] 77 P.S. § 531(6), seeking review of the reasonableness and/or necessity of Claimant's chiropractic treatments from August 2, 2000, ongoing. The UR Request was assigned to Louis Camilli, D.C., who issued a UR Determination dated October 4, 2000, and concluded that Dr. Homonai's treatments of Claimant, from August 2, 2000, ongoing and at a rate of two treatments per month, were reasonable and necessary. Pursuant to Section 306(f.1)(6)(iv) of the Act, Employer timely filed its UR Review Petition on November 17, 2000.[2]

---

1. Act of June 2, 1915, P.L. 736, *as amended.* Section 306(f.1)(6) of the Act provides:

    (6) Except in those cases in which a workers' compensation judge asks for an opinion from peer review under section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:
    (i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the department may not engage in such utilization review.
    (ii) The utilization review organization shall issue a written report of its findings and conclusions within thirty (30) days of a request.

    (iii) The employer or the insurer shall pay the cost of the utilization review.
    (iv) If the provider, employer, employe or insurer disagrees with the finding of the utilization review organization, a petition for review by the department must be filed within thirty (30) days after receipt of the report. The department shall assign the petition to a workers' compensation judge for a hearing or for an informal conference under section 402.1. The utilization review report shall be part of the record before the workers' compensation judge. The workers' compensation judge shall consider the utilization review report as evidence but shall not be bound by the report.

2. This Court notes that this present controversy involves a series of multiple petitions between Claimant and Employer. While the UR Review Petition was consolidated for hearing before the WCJ with Employer's Petition to Terminate Compensation Benefits, and with Claimant's Petition to Review Compensation Benefits, only one narrow issue under the UR Review Petition is presented to this Court. *See* WCJ Decision at 1–2.

Before the WCJ, both parties, represented by counsel, presented medical evidence regarding the reasonableness and necessity of Claimant's treatments. The WCJ found Claimant's medical experts more credible than those of Employer, and ultimately concluded that Employer failed to show that the treatments at issue were neither reasonable nor necessary, and concomitantly denied Employer's UR Review Petition. The WCJ then addressed whether Employer's contest of the UR Determination had a reasonable basis under the Act. The WCJ noted that the only medical evidence offered by Employer on the issue of the treatment was obtained by Employer on February 15, 2001, some three months after Employer filed its UR Review Petition. The WCJ found that Employer's contest of the UR Review Petition was not reasonable at the time of the contest. The WCJ, by order and decision dated June 10, 2002, awarded attorney's fees for the UR Review Petition contest in favor of Claimant and against Employer.

Employer timely appealed the WCJ's order to the Board, which heard argument on the matter without receiving any additional evidence. By order dated January 5, 2004, the Board affirmed.[3] Employer now petitions this Court for review of the Board's order.[4]

Employer presents the following issue for review: whether the Board erred as a matter of law when it affirmed the WCJ's award of attorney's fees for an unreasonable contest. Employer's argument is based on the fact that, while Employer did not have a medical opinion on which to base its contest at the time it filed its UR

Review Petition, the Act mandates that the Petition be filed within thirty days of Employer's receipt of the UR Determination, and the Act *does not expressly state* that the challenge be based upon medical evidence at the time of filing.

■ Section 306(f.1)(6) of the Act, 77 P.S. § 531(6) controls disputes over the reasonableness or necessity of treatments received by a claimant in a Workers' Compensation claim. Employer recognizes that precedent has long established that Workers' Compensation contests will be held unreasonable where an employer does not possess a medical opinion when the contest is filed. Additionally, Employer accurately notes that this precedent, addressing foundational medical evidence, has never been applied to UR Review Petitions under Section 306(f.1)(6) of the Act. Employer emphasizes that Section 306(f.1)(6) does not *expressly* require a medical opinion as a prerequisite to filing a UR Review Petition. Employer further argues that Section 306(f.1)(6) mandates that a UR Review Petition be filed within thirty days after the receipt of the UR Determination—a time period that does not facilitate the timely acquisition of a medical opinion.

Section 440(a) of the Act, 77 P.S. § 996(a), provides that where a claimant succeeds in a litigated case reasonable counsel fees are awarded against the employer, as a cost, unless the employer meets its burden of establishing facts sufficient to prove a reasonable basis for the contest. *Weiss v. Workmen's Compensation Appeal Board (Birch)*, 106 Pa. Cmwlth.361, 526 A.2d 839, *petition for al-*

---

3. By order dated January 7, 2004, the Board amended typographical errors within its January 5, 2004, Opinion.

4. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are

supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

*lowance of appeal denied,* 517 Pa. 612, 536 A.2d 1335 (1987). This section is intended to deter unreasonable contests of workers' compensation claims and to ensure that successful claimants receive compensation, undiminished by the costs of litigation. *Poli v. Workmen's Compensation Appeal Board (Arlyn Printing & Advertising Co.),* 34 Pa.Cmwlth.630, 384 A.2d 596 (1978).

A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences, and there is an absence of evidence that an employer's contest is frivolous or filed to harass a claimant. *Wertz v. Workmen's Compensation Appeal Board (Department of Corrections),* 683 A.2d 1287 (Pa.Cmwlth. 1996), *petition for allowance of appeal denied,* 547 Pa. 747, 690 A.2d 1165 (1997). Our Courts have long held that an employer's contest of a claim under the Act is not reasonable, and that a claimant is entitled to an award of counsel fees under Section 440(a) of the Act, where the employer bases its contest on medical evidence obtained after the employer filed its contest. *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (White),* 92 Pa.Cmwlth.318, 500 A.2d 494 (1985). Whether the evidence of record establishes a reasonable contest under the Act is a question of law fully subject to review by this Court. *Yeagle v. Workmen's Compensation Appeal Board (Stone Container Corp.),* 157 Pa.Cmwlth.597, 630 A.2d 558 (1993).

Employer correctly notes that the General Assembly has provided a narrow thirty day window of Section 306(f.1)(6) of the Act, during which a UR Review Petition must be filed, and that this mandatory provision was not at issue in any prior holding, that if an employer does not have medical evidence in hand the challenge is unreasonable. The General Assembly, Employer argues, did not intend to impose penalties or fees upon a challenge to a UR Determination, or it would have provided so in Section 306(f.1)(6). This Court must disagree.

Section 440(a) of the Act, 77 P.S § 996(a), expressly states that a claimant shall be awarded a reasonable amount for, *inter alia,* attorney's fees, in the absence of a reasonable contest by an employer "[i]n *any* contested case where the insurer has *contested liability in whole or in part.*" (emphasis added). Here, it is undisputed that Employer contests its liability for the treatment in this case. Further, applying the rules of statutory construction, as suggested by Employer, reveals that the General Assembly intended no exceptions to Section 440(a)'s clear and express rule, other than the sole one presented, namely where the challenging party establishes a reasonable basis for the contest.

It is axiomatic that under Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a), "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Gallie v. Workers' Compensation Appeal Board (Fichtel & Sachs Industries),* 580 Pa. 122, 129, 859 A.2d 1286, 1290 (2004) (citations omitted). Further, it has repeatedly been recognized that the Act must be liberally construed to effectuate its humanitarian purposes, that any borderline interpretations be resolved in favor of injured employees, and that the ultimate goal of the Act is to make injured employees whole. *Id.* This Court observes that Section 440(a) contains no ambiguities whatsoever in its application to any contest of liability, in whole or in part, brought under the Act. Contrary to Employer's argument, had the General Assembly not intended Section 440(a) to apply to contests of UR Determi-

nations under Section 306(f.1)(6), it would have expressly stated such an exception. Because Section 440(a), by its own express and unambiguous terms, applies to any contest of liability, this Court must logically conclude that Section 440(a) does apply to UR Determination Review proceedings under Section 306(f.1) of the Act. As a result, the Board did not err as a matter of law in applying Section 440(a)'s mandate to the UR process.

Employer also presents a related statutory construction argument, asserting that Section 306(f.1)(6)'s narrow filing window renders it impossible for any employer to receive a UR Determination, schedule an Independent Medical Examination (IME),[5] await a claimant's attendance, and the subsequent receipt of the IME opinion, and still file a UR Review Petition within the required thirty days. Employer argues that such practical impossibility creates an absurd and unreasonable construction of the Act should this Court hold that an employer is required to meet these procedural hurdles within the allotted thirty day time frame for filing a UR Review Petition, or be forever barred from appealing the UR Determination. Employer argues that a UR Review Petition is the sole mandated choice to challenge a claimant's treatment.

This Court must reject Employer's argument, noting that an appeal from an adverse UR Determination is not the exclusive "choice" for an employer's review of a claimant's treatment. Employer's argument ignores the fact that the UR Determination itself is a review of that treatment, a "choice" available to any employer (and a choice made by this Employer), regardless of the employer's lack of any medical evidence to support the challenge. It is only when an employer disagrees with that initial impartial UR Determination and elects to further challenge that the issue of a reasonable basis comes into play under Section 440(a) of the Act.

Clearly, Section 306(f.1)(6) allows any employer to challenge the reasonableness and necessity of a claimant's medical treatment without any requirement that the initial challenge be founded on medical evidence possessed by the challenger. Section 306(f.1)(6)(i) expressly requires that a Utilization Reviewer in the first instance be licensed in the same profession and/or have the same specialty as the provider whose treatment is being challenged, and further requires that said reviewer be expressly and previously approved for such third party review.[6] As the first step in the UR process, an initial UR under Section 306(f.1)(6)(i) is an employer's exclusive procedural path to obtain an initial review of a claimant's treatment.

However, Employer fails to recognize that this exclusive first step in challenging a claimant's treatment carries no evidentiary requirements whatsoever on an employer's part, and that no contest of a claimant's treatment may be found to be unreasonable in this first instance of third party review under Section 306(f.1)(6). Clearly, an initial UR under Section 306(f.1)(6)(i) is not, technically, a "contest" for purposes of Section 440(a). An initial UR, rather, as stated in Section 306(f.1)(6)(i), is a determination by an impartial third party, and is not driven by the presentation of evidence by either par-

---

**5.** As discussed below, this Court does not agree with Employer's implication that an IME is the sole form of medical evidence upon which a reasonable contest may be based at the time of the contest's initiation.

**6.** This Court emphasizes that a Utilization Reviewer under this section is solely authorized as such by the Department of Labor and Industry, and not by the parties themselves. Section 306(e) of the Act, 77 P.S. § 531(6)(i).

ty, or reviewed by a WCJ. As such, Section 440(a) is inapplicable to an initial UR by its own plain terms, and hence no reasonable contest basis analysis, or potential attorney's fees award, applies.

Unlike the first step, an appeal from an initial UR Determination under Section 306(f.1)(6)(iv) of the Act is clearly a "contest" disputing liability, because an appeal is brought by petition and, thereafter, assigned to a WCJ for hearing and the receipt of evidence and argument. As such, Section 440(a), and a reasonable contest basis analysis, must apply. It is an employer's *continued* pursuit, under Section 306(f.1)(6)(iv), of a challenge to a claimant's treatment which triggers an examination of the reasonableness of the employer's contest and the concomitant requirement that the contest have some basis beyond the employer's bare assertions.

Simply put, Section 306(f.1)(6)(i) gives every employer the right to review a claimant's treatment notwithstanding the existence of any evidentiary basis. However, an employer's choice to initiate an additional and continuing contest of that first review must have an evidentiary basis, or be subject to an award of attorney's fees under Section 440(a) in light of the Act's ultimate goal of making injured employees whole. This Court finds this approach is neither absurd nor unreasonable, and is consonant with Section 440(a)'s clear application to any contest of liability under the Act, and consistent with our Courts' treatment of other liability contests under the Act.

■ This Court has consistently held that a reasonable contest is one which is prompted by a genuinely disputed issue, which genuine dispute can be found where the medical evidence is conflicting or susceptible to contrary inferences. *LaChina v. Workmen's Compensation Appeal Board (Dana Corp.)*, 664 A.2d 204 (Pa.

Cmwlth.1995). For an employer to establish that its contest is reasonable, it must have in its possession at the time of the decision to contest, or shortly thereafter, medical evidence supporting that position. *Id.* at 206, *citing Yeagle*, 630 A.2d at 560. *See Boyer v. Workers' Compensation Appeal Board (First Capital Insulation, Inc.)*, 740 A.2d 294 (Pa.Cmwlth.1999) (unreasonable contest where employer had no medical evidence at the time employer chose to contest its liability; *post hoc* medical examination did not cure this defect); *Lewistown Hospital v. Workmen's Compensation Appeal Board (Kuhns)*, 683 A.2d 702 (Pa.Cmwlth.1996) (award of attorneys' fees for unreasonable contest depends upon whether contest was *prompted* to resolve a genuinely disputed issue) (emphasis added); *Jones & Laughlin* (after-acquired medical evidence did not convert an unreasonably initiated contest into a reasonable one).

*Jones & Laughlin,* and its progeny, have long established that the pursuit of a claim by an employer, contesting liability under the Act, is not reasonable where the employer lacks a scintilla of medical evidence to support its contest, until after the contest is initiated. This Court has determined that an employer's sole reliance on such after-acquired evidence establishes that the pursuit of such a contest "was already a *fait accompli*" before any such medical basis existed, and clearly establishes that the contest was not brought "for the resolution of any generally disputed liability" as required under Section 440(a). *Jones & Laughlin,* 500 A.2d at 495. While *Jones & Laughlin,* and other precedent, addressed contests other than those involving UR procedures, applying the rule to UR contests clearly conforms with Section 440(a)'s mandate, and with the Act's purposes.

Also, instructive, this Court has examined Workers' Compensation contests that were initially reasonable, but became unreasonable when purposefully pursued despite the Employer's lack of any medical evidence to reasonably justify continuation. This Court has maintained that if an employer's contest of liability is initially founded upon an evaluation that the injury was not work-related, that contest is indeed *initially* reasonable; however, the employer's *continuation* of that contest becomes unreasonable when the employer's own medical expert later finds work relatedness. *Yeagle* is persuasive:

> To allow after-acquired medical opinions to justify an employer's contest would allow the decision to deny compensation to be based not on what a medical opinion is, but on the hope that some kind of medical evidence can be elicited prior to hearing.

> Here, what might have begun as a reasonable contest became unreasonable . . . once [employer] continued to contest the claim without any factual basis in the hope that it could later find a medical witness who would provide it with the testimony to rebut [c]laimant's proof.

*Yeagle*, 630 A.2d at 560.

As in *Yeagle*, Employer's initial "contest" here was reasonable—an employer always is entitled to challenge the reasonableness and necessity of a claimant's treatment without any evidentiary basis under Section 306(f.1)(6)(i), by request for review by an impartial third-party UR organization. Again, as in *Yeagle*, Employer's choice to continue the contest and file a UR Review Petition, without any reasonable basis, and solely on the hope that it may later produce such a basis, is not reasonable.

■ As generally stated, this "reasonable basis" precedent indeed applies to an employer's continued contest of the reasonableness and necessity of treatment where an employer challenges a UR Determination without any evidentiary basis. A reasonable contest must be prompted by a genuine dispute, one based upon medical evidence that supports a contest, and possessed by Employer at the time the choice is made to file the UR Review Petition. *LaChina; Yeagle; Jones & Laughlin.*[7]

---

7. Employer cites *Bolinsky v. Workers' Compensation Appeal Board (Norristown State Hospital),* 814 A.2d 833 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 575 Pa. 688, 834 A.2d 1144 (2003), for the proposition that penalties or attorney fees may not be awarded against an employer where it simply followed the exclusive procedure under the Act to challenge the reasonableness and necessity of Claimant's treatment.

In *Bolinsky*, Rita Bolinski (Bolinski) had received total disability benefits since 1978. On July 22, 1997, Norristown State Hospital (Hospital) requested a utilization review and challenged the reasonableness and necessity of Bolinski's physical therapy. Peter Grabaskas, P.T (Reviewer) "determined that the treatment provided . . . could not be considered appropriate as there was insufficient documentation regarding evaluation, diagnosis and prognosis" and as a result the treatment was not reasonable and necessary. *Id.* at 834–35. Bolinski then requested review of the utilization determination. Following a hearing and a remand from the board, the WCJ found that Bolinski "was not entitled to a quantum meruit fee as Employer [Hospital] had presented a reasonable contest." *Id.* at 835.

On appeal, this Court affirmed:

Employer [Hospital] . . . followed the utilization review process that is its exclusive means of determining whether any medical treatment provided to a claimant under the act was reasonable or necessary. . . . The reviewer then determined that the physical therapy treatments questioned by Employer were not reasonable and necessary. When Claimant [Bolinski] appealed the ruling to the WCJ, Employer [Hospital] used the report of the reviewer as evidence that the physical therapy treatments were not reasonable and necessary.

Employer next contends that Claimant's own delay in attending Employ- er's requested IME within the thirty day UR Determination appeal window excuses

*We believe that the report of the reviewer established reasonable evidence for Employer [Hospital] to contest liability.* (citation omitted and emphasis added).
*Bolinsky,* 814 A.2d at 837.

As in *Bolinsky,* this Employer challenges Claimant's medical treatments and alleged that they were not reasonable and necessary. Unlike in *Bolinsky,* here, Louis Camilli, D.C., the reviewer determined that Claimant's treatments were in fact necessary and reasonable, quite the opposite of *Bolinsky.*

Also, *Snizaski v. Workers' Compensation Appeal Board (Rox Coal Co.),* 847 A.2d 139 (Pa. Cmwlth.2004), is distinguishable from the present controversy. In *Snizaski,* Renee Snizaski (Snizaski) filed a penalty petition against Rox Coal Company (Rox) and alleged that Rox failed to pay her compensation benefits within thirty days after the award pursuant to Section 428 of the Act, 77 P.S. § 921 (*Snizaski* is now pending before our Pennsylvania. Supreme Court on the issue of "[w]hether it is an error of law and/or an abuse of discretion for a WCJ to award penalties against an employer who fails to pay benefits within 30 days pursuant to Section 428 of the Act, 77 P.S. § 921, in reliance upon a timely filed supersedeas request pursuant to 34 Pa Code §§ 111.22–111.24") *Snizaski v. Workers' Compensation Appeal Board (Rox Coal Company),* 580 Pa. 549, 862 A.2d 582, 583 (2004). The WCJ "granted the petition and awarded Claimant [Snizaski] a penalty of $14,771.92 and attorney's fees of $2,810.80, concluding that the penalty was appropriate...." *Id.* at 141, 862 A.2d 582. The board reversed and concluded that Rox "had no obligation to pay while a supersedeas request was still pending before the [b]oard." *Id.* at 141.

On appeal, Snizaski argued that "the filing of an appeal and a request for supersedeas is not sufficient to suspend Employer's [Rox] obligation under the Act ... where an employer does not pay an award within 30 days of the date on which its obligation to pay arose...." *Id.* at 141. This Court rejected Snizaski's argument and affirmed the board:
In *Candito [v. Workers' Compensation Appeal Board (City of Philadelphia),* 785 A.2d 1106 (Pa.Cmwlth.2001)], we addressed whether penalties should be imposed while an employer's request for supersedeas was pending, *albeit* before this Court. At issue in that case was whether it was an abuse of discretion not to award penalties where payment was not made with the 30–day time period when the Board had denied the supersedeas request but then this Court had ultimately granted it. In holding that it was not an abuse of discretion ... [w]e ... stated that, "[t]o hold that an employer is liable for penalties for not paying compensation when its request for supersedeas is pending is, in effect, to make an employer's right to seek a supersedeas in most instances a nullity." *Candito,* 785 A.2d at 1110....
In accord with Candito ... [b]ecause the Board's own regulations provided that Employer's obligation to pay was, in effect, stayed, it was an abuse of discretion for the WCJ to award penalties for the period during which the supersedeas was being processed. (footnote omitted).
*Snizaski,* 847 A.2d at 142–43.

Unlike here, *Snizaski,* dealt solely with the Board's regulations concerning the filing of a supersedeas which is a separate petition filed from the appeal and "accompanied" with a WCJ's decision or order and opinion of the Board "from which the supersedeas is requested." *See* 34 Pa.Code § 111.21. Specifically, 34 Pa.Code § 111.21 (content and form) provides:
6. Other relevant information for the Board's consideration in determining whether the supersedeas request meets the following standards:
(i) The petitioner makes a strong showing that it is likely to prevail on the merits.
(ii) The petitioner shows that, without the requested relief, it will suffer irreparable injury.
(iii) The issuance of the stay will not substantially harm other interested parties in the proceeding.
(iv) The issuance of a stay will not substantially harm other interested parties.
This Court's holding in *Snizaski,* that the WCJ abused his discretion when he awarded penalties against an employer who had complied with the requirements for a petition for supersedeas, has no bearing on the present controversy which concerns Employer's burden to establish facts sufficient to prove a reasonable basis for the contest. *See* Section 440(a) of the Act, 77 P.S. § 996(a).

Employer's continuation of its contest without any medical basis. Employer contends that, had Claimant attended an IME within that thirty day period, Employer would have had a medical opinion to continue the contest, prior to filing the UR Review Petition. As the Board observed:

What must be remembered is that [Employer] invoked the utilization review process, apparently without any back-up evidence to contest the reasonableness or necessity of Claimant's treatment. When this process failed to give [Employer] the UR Determination it was hoping for, it continued the process by filing a UR Determination [Review Petition] again without supporting evidence in hand. Consequently, it assumed the risk of attorney's fees if the [WCJ] ultimately rejected its later-acquired medical evidence.

We reject [Employer's] alternative argument that Claimant's failure to attend an [IME], scheduled within the statutory 30 day window for seeking review of the UR Determination, somehow excuses its lack of medical evidence to support its filing of a UR [Review] Petition. First, [Employer] fails to substantiate its argument with legal authority. Second, [Employer] started the whole utilization review process without supporting medical evidence, and cannot simply shift the blame onto Claimant when it is unable to have an IME completed within 30 days of receiving an adverse UR Determination. Third, nothing in the Act required [Employer] to have an IME to establish a reasonable contest. A medical opinion based on a records review probably would have sufficed.

Board Opinion at 5. This Court agrees with the Board.

There are two dispositive and distinctive reasons for requiring a medical opinion to establish a reasonable challenge. First, Claimant began the treatment at issue on June 2, 2000. Employer chose not to pursue any medical opinion whatsoever as to the reasonableness and/or necessity of that treatment at any time prior to Employer's receipt of the adverse UR Determination, on October 4, 2000. Following Employer's receipt of the UR Determination, Employer began its first and only pursuit of medical evidence to support its challenge. That pursuit did not yield a medical opinion supporting its contest until February 15, 2001. Notwithstanding the WCJ's failure to make any findings regarding which party was responsible for the delay in the execution of the IME, Employer chose to initially invoke the UR process, chose not to pursue supporting medical evidence, and continued not to pursue such evidence during the UR Determination process, despite its medically unsupported challenge to the reasonableness of Claimant's treatment. While it was Employer's right under the Act to invoke the initial UR process without any medical evidence, the foregoing analysis of the Act and caselaw make clear that Employer's decision to *continue* the contest in the absence of any medical evidence was unreasonable.[8]

Second, this Court agrees with the Board that nothing in the Act or our precedent may be construed to require an IME as the sole sufficient medical evidentiary basis for a continuing challenge to the reasonableness of the treatment. As not-

8. Presently, Claimant's alleged delay in attending the IME is not relevant to the question of the purpose of Employer's continued contest. Clearly, at no time prior to Employer's initial or continued contest of Claimant's treatment was there any evidentiary basis that

established a genuine dispute; merely, Employer founded its continued contest on its hope that such a dispute could be made genuine with evidence acquired after Employer decided to continue its contest by filing its UR Review Petition.

ed, Employer had sufficient time to evaluate whether it was medically reasonable to invoke the UR process. Similarly, Employer had sufficient time to pursue medical evidence, other than an IME, to support its decision to continue its challenge of the UR Determination prior to the expiration of the statutory thirty day appeal period. Employer repeatedly chose not to pursue medical evidence that would establish a reasonable basis for a continued challenge. This clearly leads to the conclusion that the present contest was not *prompted* by an attempt to resolve a genuinely disputed issue. *LaChina; Boyer; Lewistown Hospital.*

Contrary to Employer's assertion, Claimant had no control over when Employer would pursue a medical opinion on the reasonableness and necessity of Claimant's treatment. Employer chose not to obtain any medical evidence until well after it challenged Claimant's treatment, via the initial UR request and Employer's subsequent UR Review Petition. Particularly where the UR Determination itself was an independent, objective medical opinion provided to Employer at its request, which provided no basis for a continuation of Employer's contest. Employer still chose to proceed.

Finally, this Court must address Claimant's request for attorney's fees for its defense of the present appeal by Employer pursuant to Pa.R.A.P. 2744.[9] Claimant argues that Employer's appeal was dilatory and frivolous, in that *Jones & Laughlin* and its progeny clearly establish

that any contest under the Act that is based solely upon after-acquired medical evidence is unreasonable. However, because Employer's present appeal presents a narrow issue of first impression involving UR proceedings, this Court denies Claimant's request for attorney's fees under Pa. R.A.P. 2744.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 2nd day of December, 2005, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. In this case of first impression, the Court holds that an employer can be required to pay attorney fees if the employer fails to prove that a course of medical treatment is not reasonable or necessary. I do not believe the General Assembly has authorized the payment of such fees anywhere in the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501.2626.

In this case, Employer challenged an ongoing course of chiropractic treatment for Claimant's low back strain. Consistent with the Act, Employer sought a utilization review from a licensed URO, which assigned the matter to a review by Louis Camilli, D.C., another chiropractor. Dr. Camilli determined that Claimant's chiro-

9. Rule 2744 provides:

Further Costs. Counsel Fees. Damages for Delay.
In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
(1) a reasonable counsel fee and

(2) damages for delay at the rate of 6% per annum in addition to legal interest, if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

practic treatment was reasonable and should continue indefinitely into the future. Employer appealed on November 17, 2000, and its appeal was assigned to a WCJ on December 1, 2000.[1] On February 15, 2001, W. Brett Carothers, D.C., conducted an independent chiropractic examination of Claimant. Dr. Carothers concluded that Claimant's therapy, which consisted of lying on a roller bed and having a "thumper clicker" applied to the low back, was no longer reasonable or necessary. Reproduced Record at 67a (R.R. ___). This kind of passive, in-office therapy, in the opinion of Dr. Carothers, was not what Claimant needed; rather, he needed an active, home-based course of therapy. Further, the therapy gave Claimant, at best, only temporary relief. It is uncontested that Dr. Carothers' opinion was sufficient to make Employer's appeal of the URO determination a reasonable one, at least as of February 15, 2001. Notably, Employer obtained Dr. Carothers' opinion within 90 days of its appeal, in spite of the fact that Claimant resisted the examination and attended it only after being ordered to do so by the WCJ. Employer was neither dilatory nor vexatious in seeking a review of the reasonableness of Claimant's medical treatment.

The Act includes several measures designed to resolve workers' compensation claims promptly and fairly. For example, a WCJ may impose penalties upon an employer who violates the Act. *See* Section 435 of the Act, 77 P.S. § 991. Another example is the WCJ's authority to impose costs. Section 440(a) of the Act, 77 P.S. § 996(a), authorizes a WCJ to order an insurer to pay "the employee or his dependent, as the case may be, ... a reasonable sum ... for attorney's fees" unless the insurer establishes "a reasonable basis for the contest."[2] This measure discourages employers from using litigation to delay payment of a valid compensation claim. However, Section 440(a) applies only to litigation of compensation awards and not to utilization review litigation. This is logical because of the fundamental difference between a contest of a compensation award and a contest over a particular provider's invoice.

Utilization review was established as part of a legislative program intended to control the medical costs associated with workers' compensation. To that end, Section 306(f.1) of the Act, 77 P.S. § 531, instituted, *inter alia,* the following: a cap on the amount that can be charged by a provider; a requirement that employees visit an employer's authorized panel of

---

1. The WCJ stated in her opinion that "[t]he Utilization Review Petition was assigned to this [WCJ] on March 2, 2000." WCJ Opinion at 1. The certified record indicates that the date of assignment was December 1, 2000.

2. Section 440(a) states in full:
   (a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving *petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards,* agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be

awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That costs for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.
77 P.S. § 996(a) (emphasis added). The list does not include *petitions to review a determination of a URO.* Whether or not a provider's invoice will be paid is not a modification of a compensation award; the compensation award remains intact notwithstanding a utilization review.

physicians; and peer review of provider services by a licensed URO. Section 306(f.1), which is a self-contained regime, makes no mention of awarding attorney fees in the case where an employer's appeal of a URO determination is found to be unreasonable to a claimant or provider. Further, even though Section 306(f.1) makes several references to other statutes and to other provisions of the Act, it does not refer to Section 440(a) of the Act, 77 P.S. § 996(a).

Utilization review is narrow in scope. It pertains to a provider's course of treatment, and it has no impact on the claimant's award for medical benefits.[3] Utilization review is available only where the employer's liability for a claimant's medical treatment has already been established; its purpose is to permit oversight of the treatment of an injury. Utilization review may be initiated by an employer, provider or an employee. The challenge is initiated by requesting review from a URO, which is a private organization licensed by the Commonwealth; the URO then assigns the request to a provider who specializes in the same medical specialty as the provider being reviewed. Notably, the cost of the URO must be borne by the employer, even when the review is sought by the employee. Any person affected by the URO's determination, including a provider, may appeal to a WCJ and must do so promptly, *i.e.*, within 30 days of receiving the URO determination.[4]

The majority believes that Employer's contest was unreasonable because it did not obtain the opinion of Dr. Carothers before appealing Dr. Camilli's determination. Apart from the fact that it is unreasonable to expect that Employer could have done so within 30 days, attorney fees are not authorized.

Section 440(a) does not cover appeals of URO determinations. First, Section 440(a) does not identify a utilization review petition as one of the petitions that can trigger an award of costs, including attorney fees. Second, Section 440(a) authorizes an award of costs to "an employee or dependent," but not to a "provider," in spite of the fact that the provider can be the party adverse to an employer in a utilization review petition. This omission of providers also supports the inference that Section 440(a) does not apply to utilization review controversies. Stated otherwise, by its plain terms, Section 440(a) applies only to petitions that relate to compensation awards and not to utilization review petitions.

If the legislature had intended to authorize an award of costs in a URO appeal, it would have so stated in Section 306(f.1) or in Section 440(a). It did not, and there are reasons that explain this policy decision. There is less at stake in utilization review, *i.e.*, one or several medical bills, not the ability to receive medical treatment for a work-related injury. Second, the claimant is not liable for a provider's bill should the employer prevail in a utilization

---

**3.** Indeed, utilization review is not properly invoked where the employer disputes liability for medical treatment for the reason that it is not causally related to the original work-related injury; such a challenge must be addressed to a WCJ. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314 (Pa.Cmwlth.1996).

**4.** A WCJ may not consider a claim that there has been an overcharge or inappropriate

treatment unless a URO review has been done. Further, if a timely appeal is not filed, a WCJ is bound by the URO determination even if evidence in another proceeding shows that the URO erred. Further, the parties by stipulation cannot agree to bypass URO review and proceed directly to a WCJ. *Zuver v. Workers' Compensation Appeal Board (Browning Ferris Industries of PA, Inc.)*, 755 A.2d 112 (Pa.Cmwlth.2000).

review appeal. Act 44 prohibits providers from holding employees financially liable for treatment later determined unreasonable.[5] *See* Section 306(f.1)(7), 77 P.S. § 531(7).[6] Third, Section 306(f.1) builds in a disincentive against an employer invoking utilization review without having reasonable grounds: the employer bears the costs of this review even where it is initiated by the employee. Section 306(f.1)(6)(iii), 77 P.S. § 531(6)(iii).[7] The reality is that medical invoices are reviewed by professional claims adjusters with expertise in claims; they will not incur the cost of the peer review provided by a URO organization without having some reason to do so.

In short, unlike the majority, I believe the Act does not authorize an award of attorney fees in the case of a utilization review. Section 306(f.1), the logical place for such authorization is silent, and Section 440(a) of the Act applies to compensation litigation, not to utilization review. Even assuming, *arguendo*, that Section 440(a) does apply in a utilization review proceeding, I agree with Employer that it did not need a medical opinion in its favor prior to appealing the determination of a URO in order for its appeal to be reasonable.

As noted by the majority, this Court has held on numerous occasions that where an employer's contest is based upon an expert medical opinion that was acquired after a contest is initiated, the contest will be found unreasonable, at least up to the point the opinion was obtained. *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (White)*, 92 Pa. Cmwlth.318, 500 A.2d 494 (1985). There are several reasons why the *Jones & Laughlin* principle should not be applied in the case of an appeal of a URO determination.

First, the risk of a frivolous URO appeal is low. It is the employer's burden to show at the hearing before the WCJ that medical treatment is neither reasonable nor necessary. This burden is not likely to be met without presenting expert testimony; accordingly, when an employer appeals to a WCJ, it does so knowing that it must incur the expense of an expert. It seems unlikely that employers will incur this cost lightly, when, after all, the matter at issue is not an entire compensation award but a provider's treatment. In other words, the cost of litigation is high relative to a successful outcome, *i.e.*, relief from liability for a provider's treatment.

Second, the time constraints for a URO review are tight. An employer, insurer, provider or employee has thirty days to appeal an adverse determination of a URO.[8] This is too short a period of time in which to obtain an expert opinion on the merits of a URO determination. To issue an *ipse dixit* rule that it is unreasonable for an employer to seek review without first having an expert opinion in hand has

---

**5.** By contrast, until such time as a claimant establishes a right to medical compensation benefits, he is responsible for the cost of his treatment.

**6.** It states:

(7) A provider shall not hold an employe liable for costs related to care or service rendered in connection with a compensable injury under this act. A provider shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer.

77 P.S. § 531(7).

**7.** It states:

(iii) The employer or the insurer shall pay the cost of the utilization review.

77 P.S. § 531(6)(iii).

**8.** Of course, this raises the question why a provider or a claimant ought not to have an expert opinion in hand when one of them appeals the determination of a URO.

overly burdensome consequences. It will mean that the expert opinion must be sought prior to initiating the utilization review because there will be no time afterwards to obtain it. This is redundant because the employer is already paying for the expert opinion provided by the URO. Further, it will mean that the employer, who has to pay for the URO review initiated by an employee, will have to engage the advice of a medical expert even when the utilization review is initiated by the employee, just in case the determination is adverse to the employer.[9] These consequences turn the cost saving objective of Section 306(f.1) on its head.

*Jones & Laughlin* established a judge-made rule that a contest to an award of medical benefits is *per se* unreasonable unless a medical opinion is obtained prior to initiating this contest. The rule does not fit into the utilization review scheme.[10] The time limits and risks involved in utilization review are completely different from those involved in a contest over an award of compensation. Accordingly, even if Section 440(a) of the Act allows for the imposition of attorney fees in a utilization review, the standard for measuring "reasonableness" should be a different one than that established in *Jones & Laughlin* for compensation contests.

Provider oversight is an important aspect to cost containment, and this goal is not advanced by encumbering utilization review with redundant medical opinions. Because Section 306(f.1) does not authorize the imposition of attorney fees in a utilization review and Section 440(a) of the Act applies to compensation awards, not to whether a provider's treatment is reasonable and necessary, I believe the WCJ erred.

Accordingly, I would reverse.

Judge COHN JUBELIRER joins in this dissent.

---

**9.** The majority observes that utilization review involves a two-step process: (1) a utilization review request, which leads to a URO determination, and (2) an appeal from the URO determination to a WCJ. The majority stresses that an employer can avail itself of the first "step" without presenting (or even having) medical evidence. Consequently, if an employer proceeds to the second "step," which the majority characterizes as a "contest," the employer must have an evidentiary basis for doing so. I am not persuaded by this attempt to put the cart before the horse. An employer's initial utilization review request may be based on little more than suspicions that a claimant's medical treatment is no longer reasonable or necessary. At this preliminary stage of the utilization review process, the employer is still assessing its position and would have no reason to incur the expense of deposing an expert until after the determination is rendered.

**10.** A dispute over eligibility for compensation may be based on numerous grounds ranging from whether the injury occurred at work to whether the injured worker was even an employee, as opposed to an independent contractor. Only those contests that involve a medical opinion will implicate the *Jones & Laughlin* rule. By contrast, each and every utilization review involves a medical opinion.